IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THE CALLAWAY BANK, | ) |
|         Plaintiff, | ) |
| v. | ) Case No. |
| BANK OF THE WEST, | ) |
|   Serve: | ) |
|   CT Corporation System | ) |
|   120 South Central Avenue | ) |
|   Clayton, MO 63105 | ) |
|         Defendant. | ) |

## COMPLAINT

COMES NOW plaintiff The Callaway Bank ("Callaway") and for its claims for relief and causes of action against defendant Bank of the West, alleges and states as follows:

### PARTIES AND JURISDICTION

1. Callaway is a banking corporation organized and existing under the laws of the state of Missouri, having its principal place of business in Callaway County, Missouri.

2. Defendant Bank of the West ("BOW") is a banking corporation organized and existing under the laws of California and doing business in numerous states, including Missouri. It may be served as indicated above.

3. This Court has subject matter jurisdiction herein, within the meaning of 11 U.S.C. § 1332, for the reason that this is an action between citizens of different states wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. Defendant is subject to service of process and to the exercise of personal jurisdiction herein, for the reason that it has transacted business within this state, contracted within this state and/or committed tortious acts within this state, out of which the claims for

relief and causes of action asserted against it arise, within the meaning of Mo. Rev. Stat. § 506.500 and Mo. Sup. Ct. R. 54.06(a).

5. In addition and in the alternative, defendant has engaged in business and other activities within the state of Missouri of such duration, kind, substance and magnitude that it is and should be deemed to be doing business in the state of Missouri and/or to have a continuous and substantial presence in the state of Missouri such that it may reasonably anticipate being subjected to *in personam* jurisdiction in Missouri upon and with respect to any claim for relief or cause of action, of whatever kind and wherever arising.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Kevin Ray Asbury and Yvette Marie Asbury (collectively "Asburys") owned a farm/cattle ranch in and around Armstrong, MO, which they operated under the name of R&K Angus Ranch.

7. The Asburys and one Robert Sand, individually and through various cattle companies he controlled, had an arrangement in which Sand and his entities kept large numbers of cattle on the Asburys' owned and leased ranch lands in and around Armstrong, Missouri, for the Asburys to raise, maintain and breed.

8. From at least September 2005, to December, 2006, Kevin Asbury was a member, along with Sand, of a limited liability company organized and existing under the laws of the state of Kentucky known as The Beef Connection, LLC ("Beef Connection"), the business of which at that time was to supply feeder calves to the cattle feeding industry.

9. During at least a portion of Kevin Asbury's time as a member of The Beef Connection, The Beef Connection employed an individual named Michael Sell, a/k/a Mike Sell ("Sell").

2

10. By virtue of his work with Kevin Asbury and Robert Sand, Sell knew that a large portion of the cattle on Asbury pastures were owned or claimed to be owned by Sand and entities Sand controlled, and not by the Asburys.

11. At some point, Sell went to work for BOW in Omaha, Nebraska as a collateral inspector and "VP Ag Field Officer."

12. The Asburys thereafter borrowed around $4,000,000 from an Omaha BOW location.

13. Around late 2006 or early 2007, Sell and BOW began insisting that the Asburys "move," i.e. pay off, the BOW loan.

14. With Sell's encouragement and assistance, the Asburys approached Callaway and represented to Callaway that they owned thousands of head of cattle and provided Callaway with a copy of a purported "inventory" of BOW's collateral as contained on a BOW form which showed the Asburys as the owners of fully 5,025 head of cattle worth $5,654,554. A correct copy of the inventory (the "BOW Cattle Inventory") is attached hereto as Exh. 1 and incorporated herein by this reference.

15. In reliance on the BOW Cattle Inventory, on or about March 8, 2007, Callaway provided the Asburys with a "take-out" loan in the amount of $4 million which the Asburys used to satisfy their obligation to BOW.

16. The BOW Cattle Inventory had been prepared and provided by, through or under Sell's auspices or at his direction or encouragement.

17. BOW, through Sell, was fully aware that not all of the cattle depicted on the BOW Cattle Inventory provided to Callaway were in fact Asburys' and that there were "irregularities" in Asbury's cattle inventories.

18. On or about March 8, 2007, the Asburys executed a Combined Promissory Note and Security Agreement, a Commercial Loan Agreement and a Commercial Security Agreement (collectively "Note and Security Agreement") in favor of Callaway. Under the terms of the Note and Security Agreement, the Asburys agreed to borrow the sum of $4 million ($4,000,000.00) from Callaway and to repay such sum to Callaway or to its order as provided in the Note and Security Agreement ("Loan").

19. In the context of the Note and Security Agreement and as security for the Loan, the Asburys granted Callaway a security interest in

    a. "[a]ll farm products including but not limited to, all poultry and livestock and their young, along with their produce, products and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines and other supplies used or produced in any farming operations";

    b. "[a]ll livestock now owned or hereafter acquired wherever located in whatever form and any additions or accessions thereof" (collectively "Collateral").

20. At the time of execution of the Note and Security Agreement, the actual advance by Callaway to the Asburys upon the Loan was the sum of $4,000,000.00.

21. BOW received payment of $3,990,668.58 from the proceeds of the Loan in satisfaction of the Asburys' obligation to it.

22. In around August, 2008, the Asburys defaulted in payment and their obligations to Callaway, as provided under the Note and Security Agreement.

23. After the application of all payments and other credits to which the Asburys are or were entitled, the principal sum of $3,071,599.88 remains due and owing to Callaway upon the Note and Security Agreement from September 15, 2010, exclusive of interest, attorneys' fees, costs and expenses otherwise allowable thereunder.

4

24. Due to irregularities in the Asburys' cattle inventory related to the asserted ownership interests of third parties in such cattle, Callaway was able to recover only a fraction of the balance remaining due under the Note and Security Agreement.

## COUNT I
### (Fraud/Conspiracy to Commit Fraud)

25. Callaway restates the preceding allegations contained in this complaint and incorporates them herein by reference.

26. The representations appearing in the BOW Cattle Inventory, particularly regarding the Asbury's ownership of the 5,025 head of cattle, were false.

27. Callaway did not know that the representations in the BOW Cattle Inventory were false.

28. BOW knew that the representations in the BOW Cattle Inventory were false or was ignorant of their truth or falsity.

29. BOW through Sell had an agreement or understanding with the Asburys for the Asburys to use the false representations in the BOW Cattle Inventory to obtain the "take-out loan."

30. BOW intended that Callaway act on the BOW Cattle Inventory by extending the "take-out loan" to the Asburys.

31. The representations appearing in the BOW Cattle Inventory were material to Callaway's extension of the "take out loan" to the Asburys.

32. Callaway relied on the BOW Cattle Inventory in extending the "take out" loan to the Asburys and such reliance was reasonable under the circumstances.

33. BOW's conduct was outrageous, willful, wanton or in reckless disregard of the rights of Callaway such that punitive damages should be awarded against it.

5

34. As a result of Callaway's reliance on the BOW Cattle Inventory, Callaway was damaged in the sum of $3,071,599.88, after the application of all payments and other credits to which the Asburys are or were entitled, plus Callaway's interest, attorneys' fees, costs and expenses.

### COUNT II
### (Negligent Misrepresentation)

35. Callaway restates the preceding allegations contained in this complaint and incorporates them herein by reference.

36. BOW supplied or directed or encouraged the supply of the information in the BOW Cattle Inventory in the course of its business.

37. BOW failed to use ordinary care in making, contributing to, or directing or encouraging the creation of the BOW Cattle Inventory.

38. Because of BOW's failure to use ordinary care, the information in the BOW Cattle Inventory was false.

39. The information in the BOW Cattle inventory was intentionally provided by BOW or at its intentional direction or encouragement for the guidance of limited persons (namely Callaway) in a particular business transaction (namely the "take-out" loan).

40. Callaway justifiably relied on the information in the BOW Cattle Inventory.

41. As a direct and proximate result thereof, Callaway has sustained damage in the sum of $3,071,599.88, plus Callaway's interest, attorneys' fees, costs and expenses.

### COUNT III
### (Aiding and Abetting/Encouragement)

42. Callaway restates the preceding allegations contained in this complaint and incorporates them herein by reference.

43. The Asburys' provision of the false BOW Cattle Inventory to Callaway constituted a wrongful act which caused injury to Callaway.

44. BOW through Sell encouraged or assisted the Asburys in applying for the "take out" loan.

45. BOW through Sell was generally aware that that the Asburys would use false information, including the false BOW Cattle Inventory, as a means of acquiring the "take out" loan from Callaway at the time it assisted or encouraged the Asburys.

46. BOW knew that the Asburys' conduct in providing false information to Callaway would constitute a breach of their duty to Callaway.

47. BOW's encouragement or assistance was a substantial factor in the Asburys' seeking the "take out" loan from Callaway.

48. As a direct and proximate result thereof, Callaway has sustained damage in the principal sum of $3,071,599.88, plus Callaway's interest, attorneys' fees, costs and expenses.

## COUNT IV
### (Money Had and Received)

49. Callaway restates the preceding allegations contained in this complaint and incorporates them herein by reference.

50. BOW has received transfers of cash from Callaway of nearly four million dollars for which it has exchanged no true or valid consideration or as a result of misleading information.

51. In equity and in good conscience, such money should not be retained by BOW but, on the contrary, should be repaid to Callaway.

52. As a direct and proximate result thereof, Callaway has sustained damage in the principal sum of $3,071,599.88, plus Callaway's interest, attorneys' fees, costs and expenses.

## COUNT V
### (Unjust Enrichment)

53. Callaway restates the preceding allegations contained in this complaint and incorporates them herein by reference.

54. BOW has received funds from Callaway without any exchange of true or valid consideration therefor or as a result of misleading information.

55. All such funds have inured directly to BOW's benefit and to Callaway's concomitant injury and damage.

56. Accordingly, BOW has been enriched under circumstances in which it would be unjust for BOW to keep those funds.

57. As a direct and proximate result thereof, Callaway has sustained damage in the principal sum of $3,071,599.88, plus Callaway's interest, attorneys' fees, costs and expenses.

### RELIEF REQUESTED

WHEREFORE, plaintiff The Callaway Bank respectfully requests the following relief:

A. That the Court make and enter its judgment against Bank of the West in the principal amount of $3,071,599.88, plus prejudgment interest from September 15, 2010;

B. That the Court make and enter its judgment against Bank of the West for punitive damages in such amount as may be sufficient to punish Defendant and to deter others from like conduct;

C. That the Court make and enter its judgment against Defendant in the amount of Callaway's reasonable attorneys' fees, costs and expenses herein incurred or expended; and

D. That the Court grant Callaway such other and further relief as may be justified in the premises.

Respectfully submitted,

McDOWELL RICE SMITH & BUCHANAN

*/s/ Hugh L. Marshall*
James F.B. Daniels, MO Bar #30003
Hugh L. Marshall, MO Bar #39193
605 W. 47th Street, Suite 350
Kansas City, MO 64112
(816) 753-5400 telephone
(816) 753-9996 telecopier
jdaniels@mcdowellrice.com
hmarshall@mcdowellrice.com

ATTORNEYS FOR PLAINTIFF

9