**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| THE CALLAWAY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-4159-CV-C-MJW |
| | ) | |
| BANK OF THE WEST, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Bank of the West filed a motion for summary judgment on September 25, 2013 (Doc. 56). Plaintiff The Callaway Bank has filed suggestions in opposition (Doc. 63), and Defendant has filed reply suggestions in support (Doc. 72). An oral argument was held on the motion on January 13, 2014.

## Background

This is a civil case filed by one bank against another bank. Because of the extensive nature of the factual details, this Court will briefly set forth an overview of the facts, which are more fully set forth in the record. The Court has reviewed all of the filings related to summary judgment.

In July of 2006, Kevin Asbury had a cattle loan with U.S. Bank that he moved to Bank of the West. Asbury's credit agreement with Bank of the West provided for a loan to Asbury for $4,000,000 for which Bank of the West took a security interest in thousands of head of cattle (4,965 head of cattle were inspected during a prefunding collateral inspection by Bank of the West) believed to be owned by Asbury, and other personal property of Asbury. Pursuant to the terms of the Credit Agreement between Asbury and Bank of the West, Bank of the West was allowed to monitor the cattle collateral that were securing the credit extended to Asbury. As a part of this monitoring, Asbury would provide Bank of the West with periodic livestock position reports in a form provided by Bank of the West. Bank of the West would then conduct on-site inspections of Asbury's cattle in order to verify the existence of the cattle pledged as security for the $4,000,000 loan.

In December of 2006, Asbury was to provide a periodic livestock position report to Bank of the West. In January of 2007, Bank of the West conducted a routine on-site inspection of Asbury's cattle. During this inspection, Bank of the West was unable to view all of Asbury's cattle. Asbury explained to Bank of the West that they were unable to see all the cattle due to bad weather and road conditions. At some time prior to the January 2007 on-site inspection of Asbury's cattle, Bank of the West received information that Asbury cared for cattle owned by other persons. Specifically, bank officials learned that Asbury cared for cattle owned by Robert Sands, a then-potential client of Bank of the West.

A few days after the incomplete January 2007 on-site collateral cattle inspection, a Bank of the West representative sent an email to Asbury requesting a follow-up inspection in order to count the cattle that could not be seen. The email requested that the inspection take place "this Thursday" in order to ensure that both Asbury and Robert Sands would be present for this follow-up inspection. The email stated that a joint tour of the cattle of Asbury and Sand was appropriate in order to ensure the integrity of the inspections of their respective cattle. The follow-up inspection requested by Bank of the West never occurred. On March 8, 2007, Asbury moved his loan from Bank of the West to The Callaway Bank. Asbury paid off his loan with Bank of the West and entered into a security agreement with The Callaway Bank in the amount of $4,000,000 with The Callaway Bank taking a security interest in Asbury's cattle (5,005 head of cattle) and some of Asbury's other assets.

In April of 2008, Asbury advised The Callaway Bank he needed more borrowing availability than The Callaway Bank could offer, and therefore, was looking to move his loan to another lender, Rabo Agrifinance. Asbury, however, never moved his loan. In August 2008, Asbury defaulted on his loan with The Callaway Bank. In late September/early October of 2008, when The Callaway Bank attempted to repossess collateral from Asbury, he admitted he did not own the cattle he had pledged to The Callaway Bank as collateral for his loan.

Since Asbury's default, The Callaway Bank has taken a resulting loss of more than $3,000,000 on its loan to Asbury. In June of 2011, Asbury pled guilty to various federal felony charges relating to a fraudulent scheme in which he falsely represented he owned many more cattle than he actually did in order to obtain the $4,000,000 loan from The Callaway Bank.

The Callaway Bank filed a civil complaint against Bank of the West with this Court on June 11, 2012. The Callaway Bank's complaint alleges multiple counts against Bank of the

West related to the Asbury cattle loan: (1) fraud/conspiracy to commit fraud; (2) negligent misrepresentation; (3) aiding and abetting/encouragement; (4) money had and received; and (5) unjust enrichment. The Callaway Bank requests relief in the amount of $3,071,599.88, plus prejudgment interest, as well a judgment in an amount sufficient to punish defendant for its conduct, and for attorney fees, expenses and costs.

## Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Discussion

Upon review, this Court finds that the extensive factual details submitted by the parties in their summary judgment pleadings (Docs. 56, 57, 63 and 72) show many issues of material fact remain in dispute as to the claims of The Callaway Bank against Bank of the West. These factual disputes include the level of knowledge Bank of the West had regarding improprieties in

3

Asbury's cattle collateral, and what participation/actions Bank of the West took, based on its knowledge, in moving Asbury's loan from Bank of the West to another lender, The Callaway Bank.  See Rest. 2d Torts, § 876 (1979) (liability "[f]or harm resulting to a third person from tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"); American Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 463-64 (8th Cir. 2013) (district court correctly found that bank's participation was sufficient to send the question to the jury; participation of lender was more than mere consent).  Cf. In re Sharp Int'l Corp., 403 F.3d 43 (2nd Cir. 2005) (lender's consent to corporation acquiring new debt was not affirmative assistance but rather was mere forebearance, and therefore, did not support aiding and abetting claim).  The disputed issues of fact in this case prevent this Court from granting the motion of Bank of the West for summary judgment.  When considering the facts in the light most favorable to The Callaway Bank, the nonmoving party, and giving The Callaway Bank the benefit of all reasonable inferences from the facts, there is sufficient evidence from which a jury could return a verdict for The Callaway Bank.  Accordingly,

IT IS ORDERED that defendant Bank of the West's motion for summary judgment is denied.  [56]

Dated this 27th day of January, 2014, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge